UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FILED
DEC 1 6 2008
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RASHEEN WALKER,

    Defendant.

Action No. 3:08-CR-41

## MEMORANDUM OPINION

THIS MATTER comes before the Court on a Motion to Suppress (Docket No. 14) filed by Defendant, Rasheen Walker. For the reasons stated from the bench, and set forth below, Defendant's Motion is hereby DENIED.

## I. BACKGROUND

### A. Factual Background

On October 20, 2007, at approximately 12:07 a.m., Richmond police officers, Gohlke, Walker, and Rice were on routine patrol in an area known to be a high crime area for drugs, guns, and crimes of violence. The officers were patrolling the parking lot of the Walmsley Court apartment complex in order to determine if there were any trespassers on the premises, a duty they were charged with by the ownership of the apartments. Initially, the police officers drove by a vehicle in the parking lot, but did not notice anyone inside. However, when they circled around the second time, the officers observed Walker sitting in the driver's seat of the parked car. The officers

pulled up beside the vehicle and Officers Gohlke and Wallace exited the police vehicle. Officer Gohlke approached the vehicle, knocked on the driver's side window, and asked Walker if he could speak with him. Walker immediately bolted out of the car and shut the door behind him. Gohlke asked Walker if he lived in the apartment complex, to which Walker replied, "no." Gohlke then asked Walker if he had any identification or weapons in the vehicle, at which point Walker responded, "No, it's not my car and I don't know what's inside it."

Officers Gohlke and Wallace both noticed that Wallace's voice was shaky, he seemed nervous, and he was looking around for an avenue for flight. This, combined with Walker's rapid exit of the vehicle and the information about his possible trespassing, made Officer Golkhe suspicious. He asked Walker if he could do a protective sweep of the vehicle. Walker replied, "no." Upon further discussion, Walker changed his earlier answer and said that he did live in the Walmsley Court apartments. Based on Walker's conflicting information about his residence and his nervous, furtive movements, Officer Gohlke decided to commence with the protective sweep of the vehicle to search for weapons without Walker's consent. Once Officer Gohlke placed his hand on the door handle, pulled, and the door clicked indicating the lock had been disengaged, Walker fled on foot from the scene. A foot chase ensued, and the officers apprehended Walker about 25 yards away from the vehicle.

Walker was placed in handcuffs, and Officer Wallace was put in charge of detaining him. Office Gohlke returned to the vehicle, performed a protective sweep, and found a firearm under the driver's seat.

Officer Wallace read Walker his <u>Miranda</u> rights and thereafter he told the police he had smoked a blunt in the car, and he had rented the car from Crawley's two days earlier. Walker further admitted that the gun found in the car was a 9 millimeter that he purchased in Chesterfield from a man named "Toy." The police then conducted a full search of the vehicle and found a bag of marijuana in the trunk hidden by a false backing in the trunk. The police questioned Walker about the drugs and he said there was about one ounce of marijuana.

B. Procedural Background

Walker was indicted on February 5, 2008 for possession with intent to distribute marijuana and possession of a firearm in furtherance of a drug trafficking crime. Walker filed the current Motion alleging that he was illegally seized, and, as a result, the searches violated his constitutional rights. Further, because the seizure was illegal, the statements made to the police were "fruit of the poisonous tree" and should be suppressed. Walker asks this Court to suppress all evidence and statements obtained on October 20, 2007.

## II. DISCUSSION

The Fourth Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment applies to searches in one's home, as well as in one's automobile. <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996). An officer does not violate the Fourth Amendment merely by

approaching a citizen on the street or in another public place. Florida v. Bostick, 501 U.S. 429, 434 (1991). A seizure occurs only when "in view of the totality of the circumstances surrounding the 'stop,' a reasonable person would not feel free to leave or otherwise terminate the encounter." United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002). Simply asking a citizen to step out of a parked car, without evidence of hostility or any restriction on a citizen's freedom is not a seizure. United States v. General, 435 F. Supp. 2d 502, 509 (E.D.N.C. 2006). As long as the citizen feels he could ignore an officer's request to exit the car or could exit the car and walk away, the encounter is not a seizure without evidence of threats or drawn weapons by the police. See id.

Moreover, a police officer may conduct an investigatory detention or seizure, commonly referred to as a Terry stop, without violating the Fourth Amendment when the officer possesses "a reasonable and articulable suspicion" that criminal activity is afoot. United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005); see also Terry v. Ohio, 392 U.S. 1, 30 (1968).

> Where a suspect is an occupant or recent occupant of a vehicle at the initiation of a Terry stop, and where the police reasonably believe the suspect may be dangerous and that there may be readily-accessible weapons in his vehicle, [the law] authorizes a protective search of the vehicle for weapons, provided the police harbor a reasonable belief that the suspect may gain access to the vehicle at a time when that access would endanger the safety of the officers conducting the stop or of others nearby—including the reasonable belief that the suspect will return to the vehicle following the conclusion of the Terry stop.

United States v. Holmes, 376 F.3d 270, 280 (4th Cir. 2004). The Supreme Court in Michigan v. Long stated that the protection of the police and the public justifies

protective searches when police "have a reasonable belief that the suspect poses a danger" based on a reasonable belief coming from specific and articulable facts. 463 U.S. 1032, 1049 (1983). Such a search is not permitted in every automobile stop, but when the police have a reasonable articulable suspicion that their safety and that of others is in danger because the automobile may contain a weapon, a protective search is permitted. Id. at 1050, n.14.

Whether the facts give rise to a reasonable and articulable suspicion must be judged objectively, i.e., whether a "man of reasonable caution" in the shoes of the police officer, given the facts, would believe the investigatory detention was appropriate. Terry, 392 U.S. at 20. Although reasonable suspicion is a less demanding standard than probable cause, "[t]he officer . . . must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989). To determine whether an officer had a reasonable suspicion of criminal activity, courts assess the totality of the circumstances surrounding the seizure. Id. at 8. Numerous relevant facts may be considered, including, but not limited to, nervousness or suspicious behavior of the defendant, whether the suspicious behavior occurred in a "high crime area," the time of day the detention occurred, and the experience of the officer. See, e.g., Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (finding that nervous, evasive, and suspicious behavior occurring in a "high crime area" is a relevant contextual consideration in a Terry stop analysis); United States v. Spearman, 255 F. App'x 178, 182 (4th Cir. 2007) (considering the defendant's furtive movements inside his car when he saw the

detectives approaching as a relevant factor giving rise to reasonable suspicion); United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (internal citation omitted) (noting that the "practical experience of the officers" and "lateness of the hour" are factors that may raise the level of suspicion).

In the present case, Officer Gohlke's knock on the window and Walker's exit of the vehicle do not constitute a stop. The officers did not ask or demand that Walker exit the vehicle; he did so voluntarily. There is no evidence that the officers had their guns drawn, were especially hostile to Walker, blocked his car from leaving, or physically touched Walker. Furthermore, the officers were tasked with investigating trespassing on the premises—as required by the ownership—therefore the questions regarding Walker's residence were justified. Accordingly, the knock on the window and Walker's voluntary exit did not require any reasonable articulable suspicion because a reasonable person would have known he was free to leave—therefore it was not a stop.

Defendant further alleges that Gohlke's attempt to do a protective sweep on the vehicle was an improper seizure because the officers lack the reasonable articulable suspicion to detain Walker. Defendant's argument is unpersuasive.

As stated above, Officer Gohlke testified that he began to conduct a protective sweep of the vehicle based on Walker's furtive movements and conflicting information. To determine whether or not Officer Gohlke possessed a reasonable belief that Walker posed a threat to him, the other officers, or the public, the totality of the circumstances must be examined. The facts in this case clearly support a

6

justification for reasonable suspicion to detain Walker. The incident occurred just after 12:00 a.m. in an area known by the police to be a high crime, high narcotics, and high violence area; Walker jumped out of the car when the police approached the vehicle to ask him a question; he appeared nervous, his voice was shaky, and he began to look around nervously; and he gave inconsistent information about his place of residence. Based on these circumstances, this Court finds that the officers had a reason to detain and conduct a protective sweep of the vehicle so as to protect themselves and the public. Therefore, the seizure and protective sweep of the vehicle was constitutionally justified.

Walker's subsequent flight from the scene, arrest and search, which yielded a firearm and marijuana, were therefore also constitutionally reasonable. Lastly, Walker's statements were elicited, after he was in custodial interrogation and properly read his Miranda warnings.

### III. CONCLUSION

For the above reasons, Defendant's Motion to suppress the evidence and the statements made by Defendant is hereby DENIED. The initial question by Officer Golkhe and Walker's exit of the vehicle were not a seizure under the Fourth Amendment. The officers were justified in detaining Walker and making the initial attempt to sweep the vehicle for weapons because reasonable articulable suspicion existed based on Walker's movements, actions, and behavior. Therefore all evidence

7

seized and statements made were lawfully obtained and did not violate Walker's constitutional rights.

Let the Clerk send a copy of this Memorandum Opinion to counsel of record.

IT IS SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 16th day of December 2008